UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 15-13570-RWZ

MARK ANTHONY MASON

v.

NANCY A. BERRYHILL,*
Acting Commissioner of the Social Security Administration

MEMORANDUM OF DECISION

March 29, 2017

ZOBEL, S.D.J.

Plaintiff Mark Anthony Mason appeals from a final decision by the Acting Commissioner of Social Security Nancy A. Berryhill ("the Commissioner") upholding the ruling of the Administrative Law Judge ("ALJ") that rejected his application for Social Security Disability Insurance Benefits ("SSDI"). Plaintiff contends that the ALJ's decision is not supported by substantial evidence and that he erred by: (1) improperly substituting his own interpretation of medical tests instead of adopting the findings of a state agency physician; (2) failing to afford controlling weight to plaintiff's treating physicians' opinions; and (3) omitting key limitations in his residual functioning capacity ("RFC") assessment when presenting his hypothetical questions to the vocational expert ("VE").

---

\*   Pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill has been substituted for Carolyn W. Colvin as Acting Commissioner of the Social Security Administration.

**I.      Background**

Plaintiff filed an application for SSDI on May 12, 2014, alleging disability due to various physical conditions beginning November 23, 2013. His claims were first denied on August 14, 2014, and again upon reconsideration later in 2014. Plaintiff filed a request for a hearing before an ALJ, and a hearing was held on June 23, 2015. At the hearing, plaintiff and a VE testified.

**A.     Applicable Statutes and Regulations**

To show entitlement to SSDI benefits, a claimant must show that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant must have an impairment, or impairments, of such severity that it renders him "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A); see also 20 C.F.R. § 404.1505(a).

The ALJ analyzes whether a claimant is disabled using an established "five-step sequential evaluation process." See 20 C.F.R.§ 404.1520(a)(4)(i)–(v). Under that framework, the ALJ first determines whether the claimant is currently engaging in substantial gainful work activity. If not, then at step two, the ALJ decides whether the claimant has a "severe" medical impairment or impairments, which means the impairment "significantly limits [the claimant's] physical or mental ability to do basic work

activities," id. § 404.1520(c).   If the claimant has a severe impairment or impairments, the ALJ considers third whether the impairment or impairments meets or equals an entry in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App'x 1, and meets the duration requirement.   If so, then the claimant is considered disabled.   If not, the ALJ must determine the claimant's RFC, which is "the most [a claimant] can still do despite his limitations," 20 C.F.R. § 404.1545(a)(1).   The ALJ then moves to step four and determines whether the claimant's RFC allows him to perform his past relevant work.   If the claimant has the RFC to perform his past relevant work, he is not disabled.   If the claimant does not, the ALJ decides, at step five, whether the claimant can do other work in light of his RFC, age, education, and work experience.   If the claimant can, he is not considered disabled; otherwise, he is.   "Once the applicant has met his or her burden at Step 4 to show that he or she is unable to do past work due to the significant limitation, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the applicant can still perform."   Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001); see also 20 C.F.R. §§ 404.1512(f), 404.1560(c)(2).

      B.     **The Initial Rejection and the ALJ's Decision**

In a July 22, 2015, written decision, the ALJ denied plaintiff's SSDI application.  He first concluded that plaintiff meets the insured status requirements of the Social Security Act through December 31, 2018.   See 42 U.S.C. § 423.   Then, he structured his decision around the five-step sequential evaluation process.   At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged

onset date of his disability. Next, at step two, he found that plaintiff has the following severe impairments: "neuropathy of the right arm, headaches, depression, and anxiety." R.[1] at 12; see also 20 C.F.R. § 404.1520(c). At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Before moving to step four, the ALJ determined plaintiff's RFC:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1576(b) except that he can only occasionally push and pull with the right upper extremity; never climb ropes, ladders, and scaffolds; could occasionally climb ramps and stairs, balance, stoop, crouch, and crawl; he could occasionally reach, including overhead reaching on the right side; he should avoid concentrated exposure to extreme cold, heat, and hazards such as the operational control of moving machinery and unprotected heights. Further, he could perform simple, routine, repetitive tasks in a low stress job with no changes in the work setting, and only occasional interaction with coworkers and no tandem tasks, and work with only occasional supervision. Please note occasional means less than 1/3 of the time.

R. at 14. The ALJ explained that although plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . the objective medical evidence and the record as a whole do not support that the [plaintiff] experiences limitations that are as significant as alleged." Id. at 15.

At the fourth step, the ALJ concluded, relying on the VE's testimony, that the claimant was unable to perform past relevant work as an auto dealership assistant service manager given his RFC. However, the ALJ determined based on the VE's

---

[1] "R." refers to the Social Security administrative record, which was manually filed in this appeal at ECF No. 15.

testimony that "considering the claimant's age, education, work experience, and residual functioning capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." Id. at 23. The VE further testified that the claimant could perform light, unskilled jobs such as a bench assembler, bench inspector, and tagger and labeler. Accordingly, the ALJ concluded that the claimant was not disabled under the Social Security Act.

    **C.    The Appeal**

Plaintiff appealed the ALJ's decision to the SSA's Appeals Council, which denied review on August 12, 2015. The ALJ's decision then became the final decision of the Commissioner. Plaintiff now seeks reversal of that determination pursuant to 42 U.S.C. § 405(g).

**II.    Standard of Review**

The Commissioner's findings of fact are conclusive if based on the correct legal standard and supported by substantial evidence. 42 U.S.C. § 405(g); Seavey, 276 F.3d at 9. Substantial evidence includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." See Richardson v. Perales, 402 U.S. 389 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). So long as the Commissioner's determinations are supported by substantial evidence, they must be affirmed, "even if the record arguably could justify a different conclusion." Rodriguez Pagan v. Sec'y Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam). Questions of law are reviewed de novo. Seavey, 276 F.3d at 9.

**III.    Discussion**

    **A.    ALJ's RFC Assessment**

Plaintiff primarily argues that the ALJ erred in determining plaintiff's RFC because he discredited treating physicians' opinions and improperly "substituted his own interpretation of the EMG studies to determine Plaintiff has no limitations in manipulative functioning in the right upper extremity."  Docket # 17, at 15.

When measuring a claimant's capabilities, "an expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person."  Santiago v. Sec'y of Health & Human Servs., 944 F.2d 1, 7 (1st Cir. 1991) (per curiam).   The reason for requiring an expert's RFC assessment is that generally, "an ALJ, as a lay person, is not qualified to interpret raw data in a medical record."  Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996) (per curiam); see also Gordils v. Sec'y of Health & Human Servs., 921 F.2d 327, 329 (1st Cir. 1990) (per curiam) ("[S]ince bare medical findings are unintelligible to a lay person in terms of residual functional capacity, the ALJ is not qualified to assess residual functional capacity based on a bare medical record.").  "This principle does not mean, however, that the [Commissioner] is precluded from rendering common-sense judgments about functional capacity based on medical findings, as long as the [Commissioner] does not overstep the bounds of a lay person's competence and render a medical judgment."  Gordils, 921 F.2d at 329.

Here, the record contained five RFC evaluations by five physicians: (1) August 12,

2014 by state agency physician[2] Dr. Draper (R. at 77–79); (2) November 3, 2014, by plaintiff's primary care physician Dr. John Shaver (R. at 445–46); (3) December 22, 2014, by state agency physician Dr. Subbiah Doraiswami (R. at 92–94); (4) April 15, 2015, by plaintiff's treating psychiatrist Dr. Peter Gheradi (R. at 454–55); and (5) May 12, 2015, by plaintiff's treating neurologist Dr. Ranbir Dhillon (R. at 501–03).

Both state agency physicians opined that plaintiff had "limited" gross manipulation abilities and was "limited" in his upper extremities. Id. at 77–78, 92–93. Dr. Shaver, opined that during an 8-hour workday, plaintiff had limitations in repetitive reaching, handling or fingering, and no ability in his right hand to grasp, turn, twist objects, perform fine manipulation with his fingers, or reach with his right arm. Id. at 445. He further opined that plaintiff would likely be absent from work more than four times a month and was physically incapable of working an 8-hour day, 5 days a week on a sustained basis. Id. Lastly, he found that plaintiff was not a malingerer. Id. Dr. Gheradi made the same exact determinations as Dr. Shaver. Dr. Dhillon largely agreed, with the exception that he opined plaintiff could grasp, turn, twist objects, and manipulate with his right hand twenty percent of an 8-hour work day, and reach with his right arm ten percent of the workday. Id. at 501–03. The ALJ did not credit Dr. Gherardi's opinion because he "does not treat the claimant's physical conditions and his assessment of physical limitations would likely be based on the claimant's subjective complaints." Id. at 22. Dr. Gherardi's opinion, however, was consistent with Drs. Shaver and Dhillon, both of

---

2  The ALJ did not address either of the state agency physicians' RFC evaluations in detail other than to state that he had "given weight to the opinion of the State agency consultants involved in the present case, but only to the extent that the opinions are consistent with the evidence of record." R. at 23.

whom conducted physical examinations of plaintiff.

The ALJ did not credit these opinions and disregarded the findings by Drs. Shaver and Dhillon because the "EMG studies of the upper extremities were normal[.]"  Id. at 22.  He did rely on three reports by Dr. Dhillon to conclude that "the medical evidence and the record as a whole do not support disabling impairments."  Id. at 19.  Specifically, in July 2014, Dr. Dhillon concluded that the "EMG did not show any evidence of denervation."  Id. at 378.  Then, in August 2014, Dr. Dhillon reported that "EMG shows the presence of mild ulnar neuropathy. However, there is no indication of muscle damage by EMG."  Id. at 402.  Later, on May 29, 2015, Dr. Dhillon concluded that "[n]erve conduction studies were normal in both upper extremities.  EMG report did not show any denervation of the left extremity."  Id. at 507.  The ALJ, however, does not explain how the EMG reports undermine the physicians' opinions.  Although the ALJ correctly notes that the contemporaneous medical evidence reflected that "his examinations have shown some sensory loss, but otherwise unremarkable findings and no evidence of a neurological impairment," id. at 20, the medical record consistently reflected that multiple of plaintiff's treating physicians determined that he had limited ability in his hands and fingers.  "The ALJ was not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion."  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (citations omitted).  Dr. Dhillon, who reported on plaintiff's EMG studies, was the same physician who opined that plaintiff had a limited ability to manipulate with his right hand.  This suggests that the EMG studies, which focused on muscle damage to plaintiff's upper extremities, may not have evaluated plaintiff's fine

manipulation abilities—which was the focus of the RFC evaluations by plaintiff's treating physicians.

### 1.   VE Testimony

Plaintiff further argues that because the ALJ disregarded the treating physicians' opinions he omitted key physical limitations when presenting his hypothetical questions to the VE at plaintiff's hearing.   As a result, plaintiff contends, the VE's testimony lacked any probative value and the ALJ's decision was unsupported by substantial evidence.   I agree.

ALJs must provide VEs with a complete picture of a claimant's residual functional capacity, and VEs must consider physical limitations.   See Arocho v. Sec.'y of Health and Human Servs., 670 F.2d 374, 375 (1st Cir. 1982) ("[I]n order for a vocational expert's answer to a hypothetical question to be relevant, the inputs into that hypothetical must correspond to conclusions that are supported by the outputs from the medical authorities.").   Thus, the ALJ must "both clarify the outputs (deciding what testimony will be credited and resolving ambiguities), and accurately transmit the clarified output to the expert in the form of assumptions."   Id.   "When an ALJ's hypothetical assumes that certain functional limitations do not exist, and when the 'medical evidence did not permit that assumption,' the ALJ cannot 'rely on the vocational expert's response as a basis for finding claimant not disabled."   Lema v. Astrue, No. 09-11858-MLW, 2011 WL 1155195, at *6 (D. Mass. March 21, 2011) (quoting Rose v. Shalala, 34 F.3d 13, 19 (1st Cir. 1994)).   And though the hypothetical questions posed by an ALJ to a VE must include only the physical and mental limitations the judge deems credible, the ALJ did not do that

in this case.

Here, the ALJ posed a hypothetical to the VE that did not include the physical limitations, which, as discussed above, were supported by uncontroverted medical opinions. Based on this RFC, the VE testified that there are "light, unskilled jobs" for plaintiff to perform. R. at 63. Plaintiff's attorney, however, asked the VE whether his opinion would change about the jobs plaintiff could perform if the hypothetical included the additional fact that plaintiff's "ability to handle and finger 20 percent of the day, and reach 10 percent of the day with the right upper extremity[.]" Id. at 63. Significantly, the VE responded that this additional limitation would change his testimony and that "[n]o, that's not going to allow for [the light, unskilled] occupations. And if the handling and fingering, essentially they're manipulatives [sic] and even – and the reaching on the dominant are less than occasional. That's going to have a very significant impact on the unskilled labor market." Id. at 64. Plaintiff's attorney incorporated the opinions of plaintiff's treating physicians in her hypotheticals to the VE:

> Q: In your opinion, if the individual were to be off task due to physical and/or mental limitations for 15% of a work day on a continued basis, how would that affect their employability?
> A: **It would not allow for sustaining competitive employment.**
> Q: In your opinion, what is the maximum percentage of time off task before it's problematic?
> A: It would – well, if – what I typically – my opinion based on the productivity surveys that, that the average employee is non-productive from approximately 10 percent or 6 minutes per hour, and that includes work breaks over the – you know, over, over the day, **so that if they were substantially – and 15 percent or more, they would not be able to sustain any competitive employment.**
> Q: Okay. And if the individual were to be absent four or more days per month, how would that affect their employability?
> A: Four or more days per month, 48 days annually would be an excessive absenteeism and not be tolerated.

> Q: And what is the accepted rate of absenteeism?
> A: There's research about how many days until you get fired, but if we look at utilization, the average number of sick and personal days taken by employees who have paid sick and personal days is eight annually.
> Q: So when we get above that, it become problematic?
> A: You're going to be – yeah, yeah, it would be problematic.

Id. at 67–68 (emphasis added). The ALJ, however, did not take this testimony into consideration, and instead relied solely on the VE's testimony in response to his original hypothetical that did not include any of the limitations posed by plaintiff's counsel, nor described by the treating physicians. Failing to include a functional limitation in a hypothetical question to a VE requires a case to be remanded. See Rose, 34 F.3d at 19 (holding that ALJ's omission in his hypothetical of a significant functional limitation from claimant's condition required remand).

## IV. Conclusion

Plaintiff's Motion for Order Reversing the Commissioner's Decision (Docket # 16) is ALLOWED, and Defendant's Motion to Affirm the Commissioner's Decision (Docket # 20) is DENIED.

Judgment may be entered reversing the decision of the Commissioner and remanding to (1) reassess plaintiff's RFC in light of his physical limitations as supported by the medical record, and (2) based upon that RFC determination, determine whether there are jobs that exist in the national economy that plaintiff can perform.

____March 29, 2017____   _____/s/Rya W. Zobel_____
Date                       Senior United States District Judge